Citation Nr: 1719069 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 12-18 426 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to a rating in excess of 10 percent from May 13, 2011 and in excess of 60 percent from September 19, 2016 for service-connected status post myocardial infarction.

2. Entitlement to service connection for chronic sinusitis.

3. Entitlement to service connection for hypertension.


REPRESENTATION

Veteran represented by: Virginia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

Sara Kravitz, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 2001 to March 2005.

This appeal comes before the Board of Veterans' Appeals (Board) from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In June 2016, the Veteran testified at an RO formal hearing, and a copy of the transcript is associated with the claims file. 

The Board notes that the Veteran, on his July 2012 VA Form 9 Substantive Appeal, checked that he wanted to appeal all of the issues listed on the Statement of the Case, which included the issue of entitlement to service connection for a lower back condition; however, he also wrote that he was specifically only appealing his claims for an increased rating for status post myocardial infarction; and entitlement to service connection for chronic migraines, chronic sinusitis, and hypertension. In his subsequent RO hearing and January 2017 VA Form 646 the Veteran did not raise the issue of entitlement to a lower back condition, nor was it listed as an issue of the October 2016 Supplemental Statement of the Case. Therefore, the issue is not considered to be on appeal. An October 2016 rating decision granted the Veteran's claim for entitlement to service connection for migraines, therefore the issue is no longer before the Board. 

During the course of the appeal, the RO has increased the Veteran's rating for his status post myocardial infarction in multiple rating decisions, most recently in the October 2016 rating decision assigning 60 percent disability. Since the RO did not assign the maximum disability rating possible, the appeal for a higher disability evaluation remains before the Board. See AB v. Brown, 6 Vet. App. 35 (1993) (noting that where a claimant has filed a notice of disagreement as to an RO decision assigning a particular rating, a subsequent RO decision assigning a higher rating, but less than the maximum available benefit does not abrogate the pending appeal). 

The record before the Board consists solely of electronic records within the Veterans Benefits Management System and Virtual VA.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required on his part.


REMAND

First, the Veteran stated during his June 2016 RO hearing that he had been treated for hypertension at Malcolm Grow Medical Clinic at Joint Base Andrews, Maryland. These records should be obtained upon remand.

Next, the Veteran also stated during his June 2016 hearing that he had been diagnosed with sinusitis at Sentara Healthcare. These records should be obtained upon remand.

Next, it is unclear when the Veteran's hypertension first manifested. The Veteran's service treatment records show that in May 2004 he had a history of elevated blood pressure readings on occasion in the emergency room but he had never been diagnosed with hypertension on a regular physical examination; it was further noted that the Veteran has a "possible diagnosis" of hypertension with markedly positive cardiac enzymes and an EKG consistent with acute myocardial infarction. Service records also noted that his hypertension should be well controlled with current medications with a goal of a systolic blood pressure of approximately 110. In his February 2005 Report of Medical Assessment, the Veteran had concerns about his blood pressure but is unclear whether the Veteran had a diagnosis of hypertension during this time or within a year of service. Given that the Veteran's service treatment records noted "possible hypertension" but still prescribed a course of treatment, the Veteran should be afforded a VA examination to determine the nature and etiology of his claimed hypertension, to include whether it manifested in service, or within a year of service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Finally, the Veteran submitted an October 2016 Disability Benefits Questionnaire (DBQ), in which the clinician noted that the Veteran had a pending stress test, but noted the Veteran had an interview based METs test in September 2016 that showed the Veteran's METs were greater than 3-5 METs. The Veteran was granted a 60 percent disability rating by the RO for his heart disability based on these findings. However, the DBQ also noted the Veteran had 64% left ventricular ejection fraction (LVEF) readings in September 2016; and private treatment records from April 2016 note that the Veteran completed a stress echocardiogram and was able to exercise to a stage IV on the Bruce Protocol at 94%. Given that the Veteran had a pending stress test, and was able to complete his April 2016 stress test, indicating the interview based METs results from September 2016 may not be an accurate reflection of the severity of his heart disability, the Board finds that the results of the pending stress test from the October 2016 DBQ should be obtained and then a new VA examination should be conducted to determine the current severity of the Veteran's heart disability. 

Accordingly, the case is REMANDED for the following actions:

1. Obtain outstanding service treatment records from Malcolm Grow Medical Clinic at Joint Base Andrews, Maryland.

2. With appropriate authorization from the Veteran obtain:

(a) the outstanding private records from Sentara related to the Veteran's claimed diagnosis of sinusitis; and 

(b) the stress test noted as "pending" in the October 2016 DBQ. 

3. Schedule the Veteran for an examination to determine the nature and etiology of his claimed hypertension. The claims file and a copy of this remand must be made available to and be reviewed by the examiner in conjunction with the examination. The examination report must reflect that the claims file was reviewed in conjunction with the examination.

Specifically, the examiner must determine whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's hypertension began in or is etiologically related to any incident of the Veteran's military service, or whether it manifested to a compensable degree within one year of service. 

The examiner's attention is directed to May 2004 service treatment records noting that the Veteran had a history of elevated blood pressure readings on occasion in the emergency room but he had never been diagnosed with hypertension on a regular physical examination; May 2004 records noting that the Veteran a "possible diagnosis" of hypertension admitted with markedly positive cardiac enzymes and an EKG consistent with acute myocardial infarction; and May 2004 records noting that his "hypertension" should be well controlled with current medications with a goal systolic blood pressure of approximately 110. 

4. Schedule the Veteran for a cardiovascular examination to determine the severity of his service-connected status post myocardial infarction. The claims folder must be made available to the examiner. 

All necessary tests and studies should be performed, to include the appropriate exercise test(s) needed to properly calculate the Veteran's heart workload measured in METs and his left ventricular ejection fraction (LVEF). If a laboratory determination of METs by exercise testing cannot be done for medical reasons, the examiner should estimate the level of activity. This should be expressed in METs, and supported by specific examples, such as slow stair climbing that results in dyspnea, fatigue, angina, dizziness, or syncope. The examiner should also indicate whether the METs results are due solely to the Veteran's status post myocardial infarction.

The examiner should indicate which testing method, METs or LVEF, most accurately reflect the Veteran's current cardiac functional level, with a rationale provided. 

To the extent possible, the examiner should attempt to reconcile the April 2016 findings stress test with the September 2016 interview based METs findings and LVEF readings. 

All findings should be reported in detail and a complete rationale provided for each opinion.

5. Then, after ensuring any other necessary development has been completed, readjudicate the Veteran's claims. The RO should readjudicate the increased rating claim on the merits to determine the appropriate rating for the Veteran's service-connected status post myocardial infarction throughout the entire appeal period. If action remains adverse to the Veteran, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond. Thereafter, the case should be returned to the Board. 

The appellant and his representative have the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
G. A. WASIK
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).